**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

ROBERT LOWE MINTER,

            Plaintiff,

v.

AFFIRM INC., and EXPERIAN
INFORMATION SOLUTIONS, INC.,

            Defendant.

**Case No.:**  2:25-cv-00406-BHH

**JURY TRIAL DEMANDED**

## COMPLAINT

Robert Lowe Minter ("Plaintiff" or "Mr. Minter"), by and through the undersigned counsel, brings this action on an individual basis, against Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") and Affirm Inc., ("Defendant Affirm" or "Affirm") (all defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage,

1

both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Defendant Experian acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8.      The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.      In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

3

11.    Plaintiff's claims arise out of Defendant Experian's blatantly inaccurate credit reporting, wherein Experian reported to Plaintiff's potential creditors that Plaintiff had an outstanding debt when he did not. Experian and Affirm continued reporting the inaccurate debt even after Plaintiff's disputed numerous times and attached proof documentation he did not owe it.

12.    Accordingly, Plaintiff brings claims against Defendant Experian for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.    Plaintiff also brings a claim against Defendant Affirm for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and Defendant Experian, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## **PARTIES**

15.    Robert Lowe Minter ("Plaintiff" or "Mr. Minter") is a natural person residing in North Charleston, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.    Defendant Experian Information Solutions, Inc.   ("Defendant Experian" or "Experian") is a limited liability company with a principal place of business located at 475 Anton

Boulevard, Costa Mesa, CA 92626, and is authorized to do business in the State of South Carolina, including within this District.

17.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.     Defendant Affirm, ("Affirm") is a short-term installment loan company with its headquarters in San Francisco, California and is authorized to do business in the State of South Carolina, including within this District.

19.     Affirm is a short-term installment loan company and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

22.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

23.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

24.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

25.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### Factual Background

27.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

6

28.     Defendant Experian sells millions of consumer reports (often called "credit reports" or "reports") per day and also sells credit scores.

29.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant Experian, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant Experian, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

31.     Defendant Experian's consumer reports generally contain the following information:

（a）     Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

（b）     Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

（c）     Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

（d）     Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

32.     Defendant Experian obtains consumer information from various sources.  Some consumer information is sent directly to Defendant Experian by furnishers.

33.     The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like Defendant Experian) to make lending decisions.

34.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendant Experian's consumer reports.

35.     The information Defendant Experian includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

36.     FICO Scores are calculated using information contained in Defendant Experian's consumer reports.

37.     Defendant Experian knows that FICO and other third-party algorithms (as well as the algorithms owned by CRAs) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

38.     Defendant Experian knows that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

39.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

40.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it

will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

41.     Defendant Experian routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

42.     Defendant Experian fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

43.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant Experian for its inaccurate credit reporting.

44.     Thus, Defendant Experian is on continued notice of its inadequate reporting procedures.  Specifically, Defendant Experian is on notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

45.     Defendant Experian has received and documented many disputes from consumers complaining that Experian reported inaccurate information about them.

**Plaintiff Orders From Relaxe**

46.     On or around April 10, 2023, Plaintiff (a 73-year-old veteran) placed an order for a lounge chair from non-party Relaxe for $2,899.

47.     Plaintiff opted to finance the chair through Defendant Affirm.

48.     However, the very next day, Plaintiff changed his mind and notified Relaxe via email that he wanted to cancel the order before the chair was delivered.

49.     On or about April 11, 2023, Relaxe responded to Plaintiff's request saying that they had already shipped his chair but would try and work with their carrier to recall the item.

50.     On or about April 12, 2023, Relaxe sent another email to Plaintiff and offered Plaintiff a discount as an alternative solution to canceling the order. However, Plaintiff rejected this offer and reaffirmed that he wanted to cancel the order.

51.     Plaintiff never heard back from Relaxe and never received a chair, so he believed the issue was resolved.

### Plaintiff Disputes with Defendant Affirm

52.     Plaintiff was surprised when Defendant Affirm began contacting him a few months later regarding the chair.

53.     On or about June 1, 2023, Plaintiff received a notification from Affirm that he had a payment due.

54.     Plaintiff disputed the debt directly with Affirm multiple times via phone and explained he had not received the chair and had canceled the order.

55.     However, there was no resolution to Plaintiff's disputes.

56.     On or about July 14, 2023, Plaintiff filed a dispute with Affirm, explaining again that he had never received the chair, that he had no account with Affirm, and that Affirm needed to cease and desist its harassing collection phone calls.

57.     At that time, Plaintiff stopped receiving collection attempts from Affirm and believed that the matter was resolved.

### Plaintiff Applies for a Credit Card with USAA

58.     On or about April 19, 2024, Plaintiff applied for a credit card with USAA.

59.     Plaintiff was surprised to see that he was only approved for a $1,000 credit limit as that was a much smaller amount than he had anticipated.

**Defendant Experian Reports that Plaintiff Still Has a Balance Associated with Affirm**

60.     Accordingly, Plaintiff pulled his credit reports to find out why he was approved for such a low amount.

61.     Plaintiff was shocked and upset to see that **only** Defendant Experian was reporting the Affirm account. Experian was reporting it with a charged-off status and an outstanding balance of $2,889 October 2023. Experian also reported a Comment of "First payment never received."

62.     Plaintiff was confused and distressed by this information because he did not receive the chair.

63.     Plaintiff did not owe any money, and that balance amount should not have been reported after the order was cancelled.

**Plaintiff's Dispute Regarding the Inaccurate Credit Reporting May 2024**

64.     On or about May 13, 2024, extremely shocked, surprised, and embarrassed at Defendant Experian's inaccurate reporting, Plaintiff disputed the inaccurate information that Plaintiff still had an outstanding balance with Defendant Experian.

65.     Plaintiff explained that he had never received his chair and had never opened an account with Affirm; therefore did not owe any balance and the account needed to be removed from his Experian credit report.

66.     Plaintiff requested that Defendant Experian reinvestigate the disputed information, correct the reporting, and send him a corrected copy of his credit report.

**Plaintiff's Second Dispute Regarding the Inaccurate Credit Reporting June 2024**

67.     On or about June 6, 2024, Plaintiff emailed Relaxe regarding the chair.

68.     On or about June 7, 2024, Plaintiff received an email from Relaxe where Relaxe admitted the order was, in fact, recalled, and that the Affirm account had been refunded in full.

69.     After obtaining this information, Plaintiff disputed with Defendant Experian again.

70.     On or about June 12, 2024, Plaintiff disputed the Affirm account and attached a copy of his July 2023 Affirm dispute and a copy of his June 2024 email communication with Relaxe stating that Relaxe was "truly sorry for the experience" and that it appeared "this order was recalled back to us" and Plaintiff's Affirm account had been "refunded in full for this order."

**Defendant Experian's Unreasonable Dispute Reinvestigation**

71.     Upon information and belief, Experian sent Defendant Affirm an automated credit dispute verification ("ACDV") pursuant to Plaintiff's June 2024 dispute to Experian.

72.     On or about June 20, 2024, Defendant Experian responded to Plaintiff that the disputed balance amount was verified as accurate.

73.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

74.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's June 2024 dispute.

75.     Thereafter, Defendant Experian failed to correct or delete the balance amount in relation to the Affirm account reported in Plaintiff's credit file and reports.

76.     Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered in June 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant's Method for Considering Consumer Credit Report Disputes**

77.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

78.    The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

79.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

80.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

81.    Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

82.    Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

83.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

84.    These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

85.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

86.     The data furnishers, like Defendant Affirm, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

87.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Affirm's Unreasonable Dispute Reinvestigation**

88.     Upon information and belief, in or around June 2024, Defendant Affirm received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

89.     Upon information and belief, Defendant Affirm failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or about June 2024.

90.     Upon information and belief, Defendant Affirm verified the disputed information as accurate to Defendant Experian in or around June 2024 even though Plaintiff attached proof from Relaxe that the merchandise was recalled, and Plaintiff's Affirm account was refunded in full.

14

91.     Defendant Affirm violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's Dispute to Defendant Affirm June 2024**

92.     On or about June 25, 2024, Plaintiff, for the second time, disputed with Affirm via mail.

93.     Plaintiff enclosed a copy of the communications with Relaxe confirming he never received the chair and that the Affirm account was refunded.

94.     On or around July 6, 2024, Plaintiff received a reply from Affirm stating that they determined the information Affirm was reporting to Defendant Experian was accurate.

95.     Affirm continued to incessantly contact Plaintiff about the debt that Plaintiff did not owe.

**Defendant Experian Unreasonable Reinvestigation**

96.     On or about July 30, 2024, Plaintiff received another dispute response from Experian.

97.     Experian, once again, stated that it had verified the Affirm account as accurate.

**Plaintiff Dispute in September 2024 to Defendant Experian Regarding the Inaccurate Credit Reporting**

98.     As of September 2024, Defendant Experian was still reporting that Plaintiff still owed a past due balance on the Affirm account.

99.     On or about September 13, 2024, still shocked, surprised, and embarrassed at Defendant Experian's inaccurate reporting and refusal to actually review the proof included in his

15

dispute letters, Plaintiff again disputed the balance associated with the Affirm account with Defendant Experian via certified mail.

100.    Plaintiff explained that any reporting that he had a past due balance associated with the Affirm account was inaccurate. Plaintiff again attached the correspondence from Relaxe confirming that Plaintiff never received the chair and that he did not owe any money to Affirm.

101.    Plaintiff requested that Experian reinvestigate the disputed information, correct the reporting, and for Defendant Experian to send him a corrected copy of his credit report.

**Defendant Experian's Unreasonable Reinvestigation**

102.    On or about September 30, 2024, Experian sent Plaintiff an email requesting that Plaintiff file an FTC Affidavit.

103.    However, Plaintiff had never disputed the Affirm account as identity theft. Plaintiff had clearly explained in his disputes that he never received any merchandise or opened an account with Affirm.

104.    Defendant Experian also requested a number of personal identifiers and documents from Plaintiff, even though all of the requested information, minus an electric bill, had already been provided to Defendant in previous disputes.

105.    On or about October 17, 2024, Experian confirmed that the account was verified as accurate by Affirm.

106.    Upon information and belief, Defendant Experian sent Defendant Affirm an automated credit dispute verification ("ACDV") pursuant to Plaintiff's September 2024 dispute to Defendant Experian.

107. Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute and conduct an independent investigation.

108. Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's September 2024 dispute.

109. Thereafter, Defendant Experian failed to correct or delete the balance associated with the Affirm account appearing in Plaintiff's credit file.

110. Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered in or around September 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Affirm's Unreasonable Dispute Reinvestigation**

111. Upon information and belief, in or around September 2024, Defendant Affirm received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

112. Upon information and belief, Defendant Affirm failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or around September 2024.

113. Upon information and belief, in or around September 2024, Defendant Affirm verified the disputed information as accurate to Defendant Experian despite the proof Plaintiff had provided in his dispute letter.

114. Defendant Affirm violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information

available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's Dispute to Defendant Experian Regarding the Inaccurate Credit Reporting October 2024**

115.     As of October 2024, Defendant Experian was still reporting that Plaintiff owed a balance on the Affirm account.

116.     On or about October 15, 2024, still shocked, surprised, and embarrassed at Defendant Experian's inaccurate reporting, Plaintiff once again disputed the balance associated with the Affirm account with Defendant Experian.

117.     Plaintiff disputed the balance associated with the Affirm account with Defendant Experian via certified mail.

118.     Plaintiff explained that any reporting that he had a balance associated with the Affirm account was inaccurate. Plaintiff again attached the correspondence from Relaxe confirming that Plaintiff never received the chair and that he did not owe any money to Affirm.

119.     Plaintiff requested that Experian reinvestigate the disputed information, correct the reporting, and for Experian to send him a corrected copy of his credit report.

**Defendant Experian's Unreasonable Reinvestigation**

120.     Upon information and belief, Defendant Experian sent Defendant Affirm an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 2024 dispute to Defendant Experian.

121.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute - again.

122.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's October 2024 dispute.

123.   Thereafter, Defendant Experian failed to correct or delete the balance associated with the Affirm account appearing in Plaintiff's credit file or remove the account (which Plaintiff had not opened).

124.   On or about October 30, 2024, Experian notified Plaintiff (again) that the account was verified as accurate by Affirm.

125.   Again, Experian refused to independently review the proof documents Plaintiff included in his dispute letter showing he did not owe the debt.

126.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's October 2024 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Affirm's Unreasonable Dispute Reinvestigation**

127.   Upon information and belief, in or around October 2024, Defendant Affirm received at least one ACDV from Defendant Experian and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

128.   Upon information and belief, Defendant Affirm failed to review all relevant information provided by Defendant Experian regarding Plaintiff's disputes (including the proof he did not owe the debt) tendered in or around October 2024.

129.   Upon information and belief, on at least one occasion in or around October 2024, Defendant Affirm verified the disputed information as accurate to Defendant Experian.

130.    Defendant Affirm violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

131.    Plaintiff reasonably believes that Defendant Affirm continued to furnish data to Defendant Experian inaccurately suggesting that Plaintiff had a balance with Affirm.

132.    Plaintiff reasonably believes that Defendant Experian continues to this day to publish that Plaintiff had a past due, charged off balance with Affirm.

133.    As a result of the inaccurate reporting, the Defendants made it practically impossible for Plaintiff to continue to obtain credit reflecting his creditworthiness.

134.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

135.    At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

136.    As a standard practice, Defendant Experian does not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover*

*Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

137.    Defendant Experian is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs.  Accordingly, Defendant Experian's violations of the FCRA are willful.

138.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; loss of sleep; and emotional distress.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant Experian)

139.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

140.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

21

141.    On numerous occasions, Defendant Experian prepared patently false consumer reports concerning Plaintiff.

142.    Defendant Experian readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

143.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

144.    As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress.

145.    Defendant Experian's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

146.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendant Experian)

147.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

148.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

149.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

150.    On at least **four (4)** occasions, Plaintiff disputed the inaccurate information with Experian and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to his, namely, the balance associated with the Affirm account.

151.    Experian ignored the proof included in Plaintiff's dispute letters that he did not owe the debt.

152.    In response to Plaintiff's disputes, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

153.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

154.    As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress.

155.    Defendant Experian's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

156.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681s-2(b)
### Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer
### (Only Claim for Relief Against Defendant Affirm)

157.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

158.    Defendant Affirm furnished the inaccurate information about Plaintiff to Experian.

159.    Defendant Affirm violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian.

160.    Affirm failed to cease furnishing inaccurate information about Plaintiff to Experian, even after receiving multiple disputes which included proof Plaintiff did not owe the debt. Upon information and belief, Affirm received four (4) disputes via ACDVs from Experian and two (2) direct disputes

161.    As a result of Defendant Affirm's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; loss of sleep; and emotional distress.

162.    Defendant Affirm's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

163.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Affirm in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for the following relief:

i.    Determining that Defendants negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED this 21st day of January 2025.


*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
Consumer Justice Law Firm, PLC
8095 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (480) 613-7733
E: dmccraw@consumerjustice.com


*Attorneys for Plaintiff*
*Robert Lowe Minter*